## Intech, Inc. *vs.* Triple "C" Marine Salvage, Inc.

Middlesex. March 8, 2005. - April 25, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Jurisdiction,* Personal, Nonresident, Long-arm statute.

This court concluded that in a dispute regarding the sale of an amphibious vehicle, a nonresident defendant did not have sufficient contacts with Massachusetts to permit its courts to assert personal jurisdiction over that defendant under G. L. c. 223A, § 3, the long-arm statute, where the defendant did not contract to supply anything in Massachusetts [125], and where the plaintiff did not satisfy its burden of demonstrating that the defendant transacted business in Massachusetts [126-127].

Civil action commenced in the Concord Division of the District Court Department on March 12, 1997.

The case was heard by *Janet L. Sanders,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kenneth D. Quat* for the defendant.

*Robert H. D'Auria* for the plaintiff.

Greaney, J. We granted the defendant's application for further appellate review to decide whether, under reasonably settled law governing when Massachusetts may assert personal jurisdiction over a nonresident defendant, the District Court had jurisdiction over the defendant, a Louisiana corporation. We conclude that there were insufficient contacts to make the defendant subject to the long-arm statute, G. L. c. 223A, § 3. The decision and order of the Appellate Division of the District Court is affirmed.

The facts before the judge who considered the defendant's motion to dismiss were as follows. The defendant, Triple "C" Marine Salvage, Inc., is a Louisiana corporation having a principal place of business in Morgan City, Louisiana. The defendant has never maintained an office, owned property, or

held a bank account in Massachusetts. The defendant is engaged primarily in the business of buying and selling equipment. Its president is Jude A. Cloutier. In 1995, the defendant placed an advertisement for the sale of a light amphibious reconnaissance craft (LARC)[1] in Boats and Harbors magazine, which is published in Tennessee and distributed nationwide, including in Massachusetts.

The plaintiff, Intech, Inc., is a Massachusetts corporation having a principal place of business in Acton, Massachusetts. In the fall of 1995, John Baker, the president of Intech, saw the defendant's advertisement in Boats and Harbors magazine for the sale of the LARC. Baker hired William W. Taylor to negotiate the purchase of the LARC.

Taylor, acting on behalf of Baker and the plaintiff, made contact with Cloutier by telephone and agreed to purchase the LARC for $16,000. Thereafter, in late October, 1995, Cloutier transmitted by facsimile an invoice and, on receiving payment, the defendant sent the plaintiff a bill of sale. The plaintiff paid for shipping costs, and, after accepting delivery of the LARC outside of Massachusetts, Taylor, in Massachusetts, telephoned Cloutier in Louisiana indicating that he, Taylor (acting as Baker's agent), was satisfied with the vehicle. Taylor also told Cloutier that the plaintiff was interested in acquiring another LARC. Cloutier agreed to help.

On January 4, 1996, Cloutier saw an advertisement in Boats and Harbors for a LARC located in Florida. Cloutier, in Louisiana, telephoned Taylor (again acting as Baker's agent), in Massachusetts, and informed Taylor that he had found another LARC in Florida. Approximately thirty minutes later, Taylor telephoned Cloutier, and they agreed on a purchase price of $16,000. Shortly thereafter, Taylor telephoned Cloutier in Louisiana and asked to speak with the LARC's owner directly. On January 5, 1996, Cloutier provided Taylor with the owner's telephone number, an invoice for the LARC, and an estimate from a shipping vendor. Taylor sent the defendant payment in

---

[1] A light amphibious reconnaissance craft, or LARC, is an amphibious vehicle constructed by the Federal government during the Vietnam War that is now sold on the private market. A LARC is different from a World War II duck craft. No other data about a LARC can be ascertained from the record.

the form of a check dated January 10, 1996. After depositing the check, the defendant forwarded Taylor a bill of sale. Taylor took possession of the LARC in Florida. He later telephoned Cloutier in Louisiana to express (on behalf of Baker) dissatisfaction with the condition of the LARC.

The plaintiff next filed suit in the District Court, alleging, for purposes here, breach of contract, conversion, and breach of the implied warranty of merchantability, in connection with the purchase of the second LARC. Pursuant to Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), the defendant moved to dismiss the complaint for lack of personal jurisdiction. The motion was denied.

The case was tried before a judge sitting without a jury. After the conclusion of witness testimony (only the plaintiff called witnesses), the defendant moved for a directed verdict, asserting that the plaintiff had not satisfied its burden at trial of establishing personal jurisdiction over the defendant. In support of personal jurisdiction, the plaintiff stated it was relying on the materials previously filed in connection with the motion to dismiss. In a memorandum and order, the trial judge found for the plaintiff and entered a judgment against the defendant for damages and costs, additionally concluding that there was no reason to revisit the motion judge's earlier ruling on the motion to dismiss. The judge expressly found that Cloutier had initiated contact on the sale of the second LARC by telephoning Taylor in Massachusetts, thereby rejecting the defendant's contention that Taylor had made the first contact.

The defendant appealed. The Appellate Division, relying on *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149 (1978), held that, under the long-arm statute, G. L. c. 223A, § 3, there was no personal jurisdiction over the defendant. The Appellate Division vacated the judgment for the plaintiff, reversed the denial of the defendant's motion to dismiss, and ordered the complaint dismissed. The plaintiff appealed, and the Appeals Court vacated the order of the Appellate Division. *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 61 Mass. App. Ct. 537, 537 (2004). We granted the defendant's application for further appellate review.

1. As preliminary matters, we note that the trial judge's find-

ing as to the identity of the person who initiated contact on the second LARC was consistent with the evidence before the motion judge, and that the plaintiff relied on the materials before the motion judge with respect to opposing the defendant's motion for a directed verdict on the question of jurisdiction. We therefore evaluate the ruling on the motion to dismiss based on the facts before the motion judge and need only address the propriety of the order denying that motion.

2. A Massachusetts court may acquire personal jurisdiction over a nonresident "when some basis for jurisdiction enumerated in the statute has been established." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 6 (1979). The long-arm statute provides, insofar as relevant here, the following:

> "A [Massachusetts] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth; (*b*) contracting to supply services or things in this commonwealth . . . ."

G. L. c. 223A, § 3. The term "person" is defined in G. L. c. 223A, § 1, to include a corporation. "A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present." *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994). "If the literal requirements of the statute are satisfied, it also must be established that 'the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution.' " *Id.*, quoting *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, *supra* at 5-6.

3. We reject the plaintiff's contention that the defendant contracted to "supply . . . things in this commonwealth," thereby subjecting it to jurisdiction under § 3 (*b*) of the long-arm statute. As explained correctly by the Appeals Court, "[i]n both transactions with the defendant, the *plaintiff* received the LARCs in another State and was responsible for their shipment to Massachusetts" (emphasis added). *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, *supra* at 538. Consistent with *Droukas* v. *Divers Training Academy, Inc.*, *supra* at 157-159, there was no basis to exercise jurisdiction over the defendant under § 3 (*b*).

4. The plaintiff's second basis for jurisdiction relies on G. L. c. 223A, § 3 (*a*). "For jurisdiction to exist under § 3 (*a*), the facts must satisfy two requirements — the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro* v. *Manor Care, Inc.*, *supra* at 767. The first requirement is in dispute. We conclude that the plaintiff did not satisfy its burden of demonstrating that the defendant "transacted business" in Massachusetts.

Both the Appellate Division and the Appeals Court recognized the similarity of the facts of this case to the facts of the *Droukas* case, in which we concluded that there was no basis to support personal jurisdiction under § 3 (*a*). *Droukas* v. *Divers Training Academy, Inc.*, *supra* at 153. There, in response to the defendant's advertisement in Boats and Harbors, which was distributed in Massachusetts, the plaintiff purchased two marine engines from the defendant which turned out to be damaged. *Id.* at 151. The purchase came about as follows:

> "The plaintiff, in Massachusetts, telephoned the defendant's place of business in Florida, spoke with its president, and ordered the engines. Thereafter, the plaintiff forwarded a check for the purchase price to the defendant. The defendant's president sent a letter to the plaintiff in Massachusetts confirming the sale. Several other letters sent by the defendant relative to the sale were received by the plaintiff in Massachusetts. Subsequently, the defendant shipped the engines ["collect"] from Florida to Massachusetts."

*Id.* We held that these contacts were insufficient to assert jurisdiction under § 3 (*a*), pointing out that the defendant's conduct had only a "slight effect on the commerce of the Commonwealth" and was "void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State." *Id.* at 154. The *Droukas* transaction, therefore, was an isolated one lacking a justifiable ground on which to assert jurisdiction. *Id.*

The plaintiff essentially acknowledges that the sale of the first LARC constituted an isolated transaction, insufficient by itself to confer personal jurisdiction. The plaintiff, however,

argues that the two advertisements in Boats and Harbors, in conjunction with the two LARC sales, the agreement made by Cloutier that he would help find another LARC, and Cloutier's telephone call to initiate the second LARC sale, "create[d] a continuing relationship" between the plaintiff and the defendant that establishes that the defendant transacted business in Massachusetts. While the "transacting any business" clause in § 3 (*a*) has been construed broadly, see *Tatro* v. *Manor Care, Inc., supra* at 767, the plaintiff suggests too much by claiming that Cloutier's agreement to help the plaintiff find another LARC involved "a regular course of dealing" and "continuing relationship" between the parties. Although Cloutier agreed to help the plaintiff locate another LARC, Cloutier's offer was no more than an informal expression of possible future assistance to the plaintiff.

The Appeals Court placed improper emphasis on the fact that Cloutier had initiated contact with the plaintiff concerning the possible purchase of a second LARC. *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc., supra* at 540. While the contact was deliberate on the part of Cloutier, it was essentially exploratory. The telephone call alone would not come within the reach of § 3 (*a*), and the remaining facts, as has been noted, involve contacts that are essentially indistinguishable from those in the *Droukas* case. Thus, the LARC sales were two isolated transactions having "slight effect on the commerce of the Commonwealth and . . . void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State." *Droukas* v. *Divers Training Academy, Inc., supra* at 154. The motion to dismiss should have been allowed.

5. The decision and order of the Appellate Division is affirmed.

*So ordered.*